UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JACK LAMB,                                                          DECISION AND ORDER

                                          Plaintiff,               12-CV-6584 CJS

                    -v-

MONEY TRANSFER SYSTEMS, INC.,

                                          Defendant.

APPEARANCES

For Plaintiff:              John T. Refermat, Esq.
                            Lacy Katzen LLP
                            130 East Main Street
                            Rochester, New York 14604

For Defendants:             Stephen J. Jones, Esq.
                            Nixon Peabody LLP
                            1300 Clinton Square
                            Rochester, New York 14604

INTRODUCTION

        This is an action arising from a terminated employment relationship.  Now before the

Court is Defendant's motion to dismiss the Amended Complaint for failure to state a claim

(Docket No. [#13]).  The application is granted and this action is dismissed.

BACKGROUND

        Unless otherwise noted, the following facts are taken from the Amended Complaint

[#10].  Prior to 2011, Plaintiff Jack Lamb ("Plaintiff") worked as a marketer of products and

services to banking institutions, and "developed extensive and valuable information and

contacts regarding the banking industry."  Amended Complaint ¶ 5.   In exchange for

payment, Plaintiff would provide his clients with "specific, valuable information on the Top 100 banks, the senior level executives in those banks and information relevant to their strategies and priorities." *Id*. In September 2011, Defendant contracted with Plaintiff to perform certain services, which included obtaining appointments with senior bank executives. *Id*. ¶ ¶ 6-7. Defendant became impressed with Plaintiff's "professional sales methods" and "extensive library of information . . . on key executives at the Top 100 banks," and, in December 2011, proposed that Plaintiff work for Defendant full time. *Id*. ¶ par 7-8.

Plaintiff told Defendant that he would only agree to work for Defendant full-time if the agreement was for a period of three years. The Amended Complaint does not explicitly indicate that Defendant agreed to that demand. Instead, it indicates that on December 16, 2011, the parties signed a writing entitled "Jack Lamb Compensation Plan." The compensation plan described Plaintiff's duties as including the marketing of Defendant's "checXchange" service to financial institutions.[1] The compensation plan further called for Plaintiff to "develop a robust pipeline of leads through direct sales contacts" and to "actively engage in sales presentations, pricing and contract negotiations." Docket [#1-2]. The document's "performance standard" required Plaintiff to "close at least 2 (two) banks on [the] targeted list [of 40 banks attached to the agreement] per calendar year." *Id*.

As for compensation, the plan set forth "base salary" for 2012, 2013 and 2014, as follows:

 $50,000 annually per year 1 starting January 1, 2012
*$55,000 annually per year 2 starting January 1, 2013
*$60,000 annually per year 3 starting January 1, 2014

---

[1]Defendant's website describes "checXchange" as an automated check recovery system.

* Increase applies when annual Performance Standard is met.

*Id*.   Except insofar as the foregoing quote might be interpreted as doing so, the compensation plan did not expressly indicate that Plaintiff's employment was for a particular term. *Id*.   According to Plaintiff, the cumulative effect of the foregoing plan provisions was that his

> annual salary for each of the three years was contractually established at $50,000, unless he met the 'Performance Standard' of closing at least two (2) banks on a 'targeted list per calendar year,' in which case [his] salary would increase to $55,000 starting January 1, 2013, and $60,000 effective January 1, 2014.

Amended Complaint [#10] ¶ 11.[2]   The compensation plan also described formulas for commissions and bonuses, that were tied to completed transactions with banks.   The compensation plan is a succinct document, comprising less than two full pages, with a third page consisting of the aforementioned list of "target" banks.

Approximately six months into his employment, on or about June 6, 2012, Plaintiff notified Defendant that he had "more than thirty seven million dollars ($37,380,000) in specific new business prospects in his pipeline, including estimated closing dates starting as early as the next month," with nine banks. Amended Complaint ¶ 21.   However, "[s]oon thereafter," Plaintiff learned that Defendant had contacted one of those banks directly, without informing him. *Id*.   Then, on July 13, 2012, Defendant terminated the employment relationship with Plaintiff.   On July 18, 2012, Plaintiff learned that Defendant had terminated his access to "Salesforce.com," a database including "all information on his accounts and

---

[2]The compensation plan also included fringe benefits, including paid vacation, travel expenses, dental insurance and a 401K program. *Id*.

their status." *Id*. Plaintiff maintains that since that time, Defendant has "unlawfully delivered" Plaintiff's accounts to another employee, and has "misappropriated valuable business opportunities developed through [Plaintiff's] efforts." *Id*. ¶ 14.   Although the Amended Complaint refers to "business opportunities," it does not allege that Defendant actually closed deals with any of the banks with whom Plaintiff had dealings while he was in Defendant's employ, either during his employment or thereafter.

On or about September 28, 2012, Plaintiff commenced this action in New York State Supreme Court, Monroe County, and on October 29, 2012, Defendant removed the action to this Court on the basis of diversity.   On April 22, 2013, Plaintiff filed the Amended Complaint, which purports to set forth the following nine causes of action: 1) breach of contract; 2) tortious interference with economic relations; 3) breach of fiduciary duty; 4) violation of New York Labor Law Article Six; 5) unjust enrichment; 6) misrepresentation; 7) conversion; 8) promissory estoppel; and 9) quantum meruit.

On May 13, 2013, Defendant filed the subject motion to dismiss, pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6), which maintains that none of Plaintiff's causes of action state an actionable claim.   On September 12, 2013, counsel for the parties appeared before the Court for oral argument.

DISCUSSION

Defendant has moved to dismiss the complaint for failure to state a claim, and the standard for such motions is well settled:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does

4

not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

First, although a court must accept as true all of the allegations contained in a complaint,[3] that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader

---

[3]The Court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

With these general principles in mind, the Court will consider Defendant's challenges to the individual causes of action.

### *Breach of Contract*

Plaintiff contends that the parties had a three-year employment contract which Defendant breached by discharging him after only six months, without just cause, by failing to pay him salary for all three years and by preventing him from earning bonuses and commissioners during those three years. Specifically, the Amended Complaint states, in pertinent part:

> On or about July 13, 2012, MTSI wrongfully terminated Mr. Lamb's employment. Said termination was wrongful for the following reasons, among others: (1) it occurred before expiration of the three-year contractual term; (2) defendant failed to provide the full salary and benefits owed to Mr. Lamb for all three years; and (3) defendant tortiously interfered with and in fact, unlawfully prevented Mr. Lamb from pursuing and realizing contractual Commissions and Bonuses.

Amended Complaint ¶ 13; *see also, Id.* at ¶ 18 (reiterating those points). The pleading does not allege that Defendant failed to pay Plaintiff for any specific work that he performed prior to July 13, 2012, the date that he was terminated. Therefore, this breach of contract claim is concerned with the salary, commissions and bonuses that Plaintiff would have earned during the remainder of the alleged three-year term of employment.

Defendant maintains that Plaintiff's breach of contract claim must be dismissed for at least two reasons. First, Defendant maintains that the alleged agreement does not contain a duration term, and that Plaintiff was therefore an at-will employee who, under New

York law, could be discharged for any lawful reason.  Second, and similarly, Defendant contends that because the alleged three-year agreement lacks a written duration term, it fails to satisfy New York's statute of frauds, and is void.

The principles generally applicable to employment contract claims under New York law are clear:

> The elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of the contract, and resulting damages (*see Elisa Dreier Reporting Corp. v. Global Naps Networks, Inc.*, 84 A.D.3d 122, 127, 921 N.Y.S.2d 329; *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806, 921 N.Y.S.2d 260; *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803, 893 N.Y.S.2d 237; *Furia v. Furia*, 116 A.D.2d 694, 695, 498 N.Y.S.2d 12). "The elements of an effective employment contract consist of 'the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract and the salary'" (*Durso v. Baisch*, 37 A.D.3d 646, 647, 830 N.Y.S.2d 327, *quoting Merschrod v. Cornell Univ.*, 139 A.D.2d 802, 805, 527 N.Y.S.2d 109). Moreover, where the duration of a contract exceeds one year, in order to satisfy the statute of frauds "a writing must identify the parties, describe the subject matter, state all the essential terms of an agreement, and be signed by the party to be charged"(*Durso v. Baisch*, 37 A.D.3d at 647, 830 N.Y.S.2d 327 [internal quotation marks omitted]; *see General Obligations Law* § 5–701[a]; *Devany v. Brockway Dev.*, LLC, 72 A.D.3d 1008, 1009, 900 N.Y.S.2d 329).

*Kausal v. Educational Products Information Exchange Institute*, 105 A.D.3d 909, 910-911, 964 N.Y.S.2d 550, 552 (2d Dept. 2013).  On the other hand,

> [i]n New York, it is well settled that " 'where an employment is for an indefinite term it is presumed to be a hiring at will which may be freely terminated by either party at any time for any reason or even for no reason'" (*Wieder v. Skala*, 80 N.Y.2d 628, 633, 593 N.Y.S.2d 752, 609 N.E.2d 105 [1992], *quoting Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 [1983] ). An employee may rebut this presumption if he demonstrates that his employer made him aware of an "express written policy

limiting the employer's right of discharge" and that the employee relied upon that policy to his detriment (*De Petris v. Union Settlement Assn.*, 86 N.Y.2d 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 [1995], *citing Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 459–466, 457 N.Y.S.2d 193, 443 N.E.2d 441 [1982] ).

*O'Neill v. New York University*, 97 A.D.3d 199, 210, 944 N.Y.S.2d 503, 511 (1st Dept. 2012).

In this action, Defendant contends that the "Jack Lamb Compensation Plan" contains no express provision establishing a three-year term of employment, and that any alleged agreement to employ Plaintiff for three years is therefore barred by New York's statute of frauds.[4]   In particular, Defendant argues that no definite term of employment is established by the agreement's compensation provision, even though it refers to compensation over a three-year period.   On that point, Defendant cites *Heuler v. Decision Econ., Inc.*, No. 06 Civ. 4039, 2007 WL 844671 (S.D.N.Y. Mar. 19, 2007), among other cases, for the proposition that "temporal references to compensation do not create employment for a fixed duration and they do not limit an employer's right to terminate an employee at will." Def. Memo of Law at p. 6.   Defendant further contends that the pleading fails to state a claim that Defendant breached the agreement by failing to pay Plaintiff, since it does not identify a particular provision of the agreement that was breached, or state what compensation Plaintiff is owed.

---

[4]*See, Zaitsev v. Salomon Bros., Inc.*, 60 F.3d 1001, 1003 (2d Cir. 1995) ("Under the New York Statute of Frauds, 'a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: 1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.' N.Y.Gen.Oblig.Law § 5-701(a)(1) (McKinney 1989). A contract that is "capable" of being performed within one year of its making is outside the statute. *North Shore Bottling Co. v. C. Schmidt and Sons, Inc.*, 22 N.Y.2d 171, 176, 292 N.Y.S.2d 86, 89, 239 N.E.2d 189, 191 (1968).").  Plaintiff does not dispute that the alleged agreement could not be performed within one year.

The issue before the Court is whether the "Jack Lamb Compensation Plan" provides for a specific period of employment. The Court finds that it does not, and that Plaintiff was therefore an at-will employee. The law generally applicable to this issue is clear:

> Under New York law, the goal of contract interpretation is to honor the intent of the parties "as revealed by the language they chose to use." *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992.) "Where there is no ambiguity to a contract and the intent of the parties can be determined from the face of the agreement, interpretation is a matter of law, and a claim turning on that interpretation may be resolved on a motion to dismiss." *First Serv. Fin. Inc. v. City Lights at Queen's Landing, Inc.*, No. 08 Civ. 3312, 2009 WL 750190, at *2 (S.D.N.Y. Mar. 20, 2009) (internal quotation marks and citations omitted). Whether a contract is ambiguous is a question of law. *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch*, 232 F.3d 153, 158 (2d Cir.2000). "An ambiguity exists where the terms of [a] contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir.2000) (citations omitted). "This court need not accept plaintiff's interpretation of the language of the contract, although on a motion to dismiss it should resolve any ambiguities in his favor." *Verzani v. Costco Wholesale Corp.*, 641 F.Supp.2d 291, 299 (S.D.N.Y.2009) (*citing Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995)).

*Rounds v. Beacon Assocs. Management Corp.*, No. 09 Civ. 6910(LBS), 2009 WL 4857622 at *3 (S.D.N.Y. Dec. 14, 2009). "Extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous on its face." *Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195, 199, 738 N.Y.S.2d 658, 661 (2001).

Plaintiff insists that the agreement was for a three-year term, primarily based upon his alleged oral statement to Defendant, prior to the execution of the agreement, that he would only agree to a three-year contract. *See*, Amended Complaint ¶ 8. However, such

parol evidence is not admissible where, as here, the agreement itself is not ambiguous.

Looking strictly at the four corners of the compensation plan, it does not indicate that Plaintiff

had any minimum term of employment.   On this point, it is telling that the Amended

Complaint quotes other provisions of the agreement, but fails to quote the specific provision

that supposedly provides for a three-year term.   *Compare*, Amended Complaint ¶ 10 with

¶ 12.  Rather, the pleading merely asserts, in conclusory fashion, that Defendant agreed "to

retain Mr. Lamb as an employee for at least three years." Amended Complaint ¶ 10.

The closest the agreement comes to including a durational term is the provision

entitled "Base Salary," which states:

 $50,000 annually per year 1 starting January 1, 2012
*$55,000 annually per year 2 starting January 1, 2013
*$60,000 annually per year 3 starting January 1, 2014

However, the law of New York State, which applies here, holds that such a compensation

provision does not establish a definite term of employment.   Specifically, a writing setting

forth an employee's salary for a specific period does not bind the employer to retain the

employee for any length of time.   For example, in *Tyson v. Hess*, 109 A.D.2d 1068, 1069,

487 N.Y.S.2d 206, 207-208 (4th Dept. 1985), *affirmed*, 66 N.Y.2d 943, 498 N.Y.S.2d 778

(1985), the court stated:

It is well established that where an employment is for an indefinite term it is
presumed to be a hiring at will which may be freely terminated by either party
at any time for any reason or even for no reason.  The annual salary notice
which specified a 10 month period of employment and the letter from the
School District continuing her services as a bus driver "for the 1983–84
academic year" do not create a contract of employment for a definite term.
*The fact that compensation is measured by a specific period of time does not
render the employment a hiring for a specific term.*  An employer, public or
private, has the unqualified right to terminate an at-will employee without any

kind of hearing, absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual contract of employment, none of which is present here.

(emphasis added, citations and internal quotation marks omitted); *see also, Todd v. Grandoe Corp.*, 302 A.D.2d 789, 790, 756 N.Y.S.2d 658, 660 (3d Dept. 2003) ("The mere fact that the hiring is at so much a year, without a specified duration, is not evidence that the hiring is for such a period."); *Heuler v. Decision Econ., Inc.*, 2007 WL 844671 at *3 ("New York courts have repeatedly held that temporal references to compensation do not create employment for a fixed duration and they do not limit an employer's right to terminate an employee at will.").

Plaintiff contends that the cases cited by Defendant, such as *Heuler*,[5] are distinguishable, and he cites a number of cases that purportedly support his position. *See*, Pl. Memo of Law at pp. 4-8. However, the Court does not agree that *Heuler* is distinguishable. On the other hand, the cases upon which Plaintiff relies are inapposite.[6]

---

[5]Plaintiff's attempt to distinguish *Heuler* relies heavily on parol evidence, which the Court has already indicated is not admissible here. See, Pl. Memo of Law at pp. 6-7.

[6]Plaintiff cites *Nausch v. AON Corp.*, 2 A.D.3d 101, 769 N.Y.S.2d 481 (1st Dept. 2033), which involved an agreement that was ambiguous as to whether it was for at-will employment or for a term of years, which permitted the court to consider numerous pieces of parol evidence before concluding that the agreement was for a term of five years. However, the instant agreement is not ambiguous. Moreover, unlike the instant case, the primary agreement in *Nausch* contained a reference to duration that was not limited to the compensation provision. *Id.*, 769 N.Y.S.2d at 482-483 (The agreement stated that "that Nausch would be President and CEO of the newly formed company, that the parties' long-term goal was to develop an estimated $5 million in business over the next five years, and that Nausch would use his best efforts to accomplish this. The agreement provided that Nausch would be compensated at a base salary of $350,000 annually for the first two years, to be increased by 10% starting in year three and continued thereafter[.]"). Plaintiff also cites *Crean v. CP Kelco*, No. 1:02CV1547FJSDRH, 2004 WL 1505530 (N.D.N.Y. Jul. 6, 2004). However, that case is inapposite, since the employer in that case specifically agreed in writing that it would provide the employee with a three-year employment agreement "to protect him against termination without cause." *Id.*, 2004 WL 1505530 at *1. Overall, the facts and issues presented in *Crean* are completely dissimilar to the instant case. Plaintiff also cites *Esther Creative Group, LLC v. Gabel*, 25 Misc.3d 1219(A), 901 N.Y.S.2d 906 (N.Y.Sup. Oct. 7, 2009), a slip opinion from New York State Supreme Court, New York County. *Esther Creative* involved issues unrelated to the case at bar, such as the part-performance exception to the statute of frauds, and appears to have no relevance to the instant action.

As mentioned above, the essential terms of an employment contract include compensation and duration. *See Crabtree v. Elizabeth Arden Sales Corp.*, 305 N.Y. 48, 54, 110 N.E.2d 551, 553 (1953). In the instant case, the Court finds, as a matter of law, that the subject writing fails to establish the duration of the employment relationship between the parties. Consequently, the alleged three-year employment agreement, upon which Plaintiff's breach-of-contract claim is based, lacks an essential term and therefore fails to satisfy New York's statute of frauds. *See, Zaitsev v. Salomon Bros., Inc.*, 60 F.3d 1001, 1004 (2d Cir. 1995) ("To satisfy the Statute of Frauds, the writings must completely evidence the contract which the parties made.") (citation and internal quotation marks omitted). The alleged agreement is therefore void, and Plaintiff's breach of contract claim is dismissed.

### *Tortious Interference With Economic Relations*

Plaintiff maintains that Defendant tortiously interfered with his "relationships and opportunities" with banks, so that it could bypass him and deal directly with those banks, without having to pay him. Specifically, the Amended Complaint states, in pertinent part:

> [D]efendant - being privy to Mr. Lamb's valuable business contacts and other assets and fully aware of his relationships with banking representatives - knew of and tortiously interfered with Mr. Lamb's longstanding and crucial relationships and opportunities . . . to divert such business directly to MTSI, while wrongfully and unlawfully denying Mr. Lamb the various categories of compensation to which he is entitled.
>
> ***
>
> [After] Mr. Lamb advised Defendant that he had more than thirty seven million dollars . . . in specific new business prospects in his pipeline [involving nine specific banks], including estimated closing dates . . . Mr. Lamb discovered that Defendant had contacted - on its own initiative and without coordinating with Mr. Lamb – TD Bank, which [was] one of the [nine] financial institutions [mentioned above]
>
> ***

12

On or about July 18, 2012, [after Plaintiff's employment had been terminated], defendant terminated Mr. Lamb's access to Salesforce.com, the database that includes all information on his accounts and their status regarding follow up and recent contacts, etc.   Consequently, defendant then had (and has) exclusive access to the database that Mr. Lamb developed independently.[7]

*** 

On or about August 1, 2012, Mr. Lamb learned that defendant's principal Harry Johnson had a meeting scheduled with [Bank of America] for August 7, 2012. This was one of the successes achieved by Mr. Lamb, who had worked hard for months . . . to build trusted relationships with key [Bank of America] executives with the goal of securing a meeting[.]

Amended Complaint ¶ 21.   In characterizing Defendant's alleged conduct, the pleading alleges that Defendant's interference was "solely malicious, lack[ed] legitimate business justification and/or was executed using improper/unlawful means." *Id.* ¶ 22.

Defendant maintains that Plaintiff is merely attempting to circumvent New York's at-will employee rule, by casting his claim as one for tortious interference.   In that regard, Defendant contends that to maintain such a claim, the Amended Complaint must plausibly allege that Defendant utilized wrongful means to effect Plaintiff's termination, which themselves constitute a crime or an independent tort, and that the Amended Complaint fails to do so.   Defendant further contends that the pleading fails to identify a specific prospective business relationship with which it interfered.   On this point, Defendant states that Plaintiff has failed to show any interference with his own personal business relationships with the subject banks, with whom he was pursuing business relationships on behalf of Defendant, not himself.

---

[7]The pleading does not allege that the database belonged to Plaintiff, or how, if it did, Defendant was able to deny him access.

The principles generally applicable to claims for tortious interference with business relations under New York law are clear:

> To establish a claim for tortious interference with prospective business advantage, a plaintiff must demonstrate that (a) the plaintiff had business relations with a third party;[8] (b) the defendant interfered with those business relations; (c) the defendant acted with the sole purpose of harming the plaintiff or by using unlawful means; and (d) there was resulting injury to the business relationship. As relevant here, a plaintiff is required to identify a specific customer that the plaintiff would have obtained "but for" the defendant's wrongful conduct.

*Zetes v. Stephens* 969 N.Y.S.2d 298, 304 (4th Dept. 2013) (citations and internal quotation marks omitted). "An essential element of a claim for tortious interference with economic relations in New York is that the defendant acted solely out of malice and not simply in pursuit of normal economic self interest." *Klickads, Inc. v. Real Estate Bd. of New York, Inc.*, No. 04 Civ. 8042(LBS), 2007 WL 2254721 at *10 (S.D.N.Y. Aug. 6, 2007) (*citing Carvel Corp. v. Noonan*, 3 N.Y.3d 182,190 (2004)).  In that regard,

> [t]o meet the third requirement, a plaintiff must demonstrate that the action complained of was motivated solely by malice or to inflict injury by unlawful means rather than by self-interest or other economic considerations.  If the interference complained of is intended, at least in part, to advance one's own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct..

---

[8]Defendant correctly points out that "New York does not recognize a cause of action for the tort of abusive or wrongful discharge of an at-will employee, and this rule cannot be circumvented by casting the cause of action in terms of tortious interference with employment." *McHenry v. Lawrence*, 66 A.D.3d 650, 651, 886 N.Y.S.2d 492, 494 (2d Dept. 2009). The *McHenry* decision does indicate, though, that a terminated at-will employee may be able to pursue a claim for tortious interference with employment. *Id.* However, such a claim only arises where the plaintiff-employee was *employed by a third-party*, and the defendant used improper means to have the plaintiff-employee fired by that third party. *Id.*  Clearly, the instant case does not fit that scenario.

*Allcar Motor Parts Corp. v. Federal-Mogul Corp.*, No. 96 CIV. 4419(JFK), 1998 WL 671448

at *5 (S.D.N.Y. Sep. 29, 1998) (citations and internal quotation marks omitted).

The Court finds that the subject pleading does not plausibly indicate that Defendant

interfered with Plaintiff's business relationships with third parties or otherwise caused injury

to them.[9]  The pleading indicates that because Plaintiff had many pre-existing contacts in the

banking industry, Defendant hired him to establish new relationships between the banks and

Defendant.  Plaintiff was clearly not pursuing new business with banks on his own behalf,

otherwise he would not have been fulfilling the duties for which he was hired.  It would not

be plausible to contend that by using his contacts within the banking industry to drum up new

business for Defendant, Plaintiff was thereby damaging his own relationships within the

banking industry.  Similarly, it is not plausible to allege that Defendant harmed Plaintiff's

relationships within the banking industry merely by continuing to pursue its own relationships

with banks after it terminated Plaintiff's employment.  In that regard, the pleading does not

include any factual allegation indicating how Plaintiff's business relationship with any

particular bank was damaged by Defendant's actions.

In reality, Plaintiff's claim is that Defendant harmed him directly by using information

that he accumulated during the period of his employment to pursue the very same

relationships that he would have continued to pursue on Defendant's behalf if he had not

---

[9]The pleading also fails to plausibly allege that Defendant acted with the requisite malicious intent or by improper/unlawful means.  In that regard, Plaintiff does not allege that Defendant acted solely out of malice. To the contrary, the Amended Complaint unquestionably alleges that Defendant acted, at least in part, to advance its own business interests.  Specifically, the pleading states that Defendant "interfered" in Plaintiff's business relationships "to divert such business directly to MTSI." Amended Complaint ¶ 21.  The pleading also does not explain how Defendant's alleged actions described in this cause of action amount to criminal or fraudulent conduct. *See*, Amended Complaint ¶ 22 (alleging, upon information and belief, and in conclusory boilerplate fashion, that Defendant's actions were malicious, improper and unlawful).

been terminated.[10]   More to the point, Plaintiff believes that he is entitled to additional compensation.  However, such allegations fail to state a claim for tortious interference with Plaintiff's  business relations with third parties, and that claim is dismissed.

### Breach of Fiduciary Duty

Plaintiff next alleges that Defendant breached a fiduciary duty that was owed to him, by virtue of their employment relationship.  Specifically, the Amended Complaint asserts that, "among the duties that defendant owed, at all relevant times, to Mr. Lamb were fiduciary duties that required, among other things, defendant to exercise the utmost good faith and loyalty, and to refrain from undercutting Mr. Lamb's ability to perform." Amended Complaint ¶ 24.

In New York, "[a] conventional business relationship, without more, is insufficient to create a fiduciary relationship. Rather, a plaintiff must show special circumstances that transformed the parties' business relationship to a fiduciary one." *Legend Autorama, Ltd. v. Audi of America, Inc.*, 100 A.D.3d 714, 717, 954 N.Y.S.2d 141, 144 (2d Dept.2012).  Stated differently, "[u]nder New York law, where parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances." *Asian Vegetable Research and Dev. Ctr. v. Inst. of Intern. Educ.*, 944 F.Supp. 1169, 1179 (S.D.N.Y.1996) (citation and internal quotation marks omitted).  This applies to arm's length employment relationships. *See, Schenkman v. New York College of Health Prof'ls*, 29 A.D.3d 671, 672, 815 N.Y.S.2d 159, 161 (2d Dept. 2006) ("[Plaintiffs] failed to plead any facts demonstrating how the

---

[10]*See*, Amended Complaint ¶ 21 (Alleging that Defendant "attempt[ed] to divert such business directly to MTSI, while wrongfully denying Mr. Lamb the various categories of compensation to which he is entitled.").

arms-length, employer-employee relationship between the defendants and the plaintiffs gave rise to any fiduciary duty."). Where a plaintiff fails to plead facts to support such special circumstances, a claim for breach of fiduciary duty must be dismissed. *Id*.

In the instant case, Defendant reiterates that Plaintiff was an at-will employee, and maintains that employers owe no fiduciary duties to their at-will employees. Defendant further contends that apart from that fact, the pleading fails to plausibly plead either the existence of a fiduciary relationship, or the nature of the alleged breach by Defendant. The Court agrees that Plaintiff was an at-will employee, and that the pleading fails to plausibly allege the existence of a fiduciary relationship.[11] In that regard, the pleading fails to explain how the parties had anything other than an arms-length employment relationship. Accordingly, Plaintiff's claim for breach of fiduciary duty must be dismissed. *See, Weintraub v. Phillips, Nizer, Benjamin, Krim & Ballon*, 172 A.D.2d 254, 568 N.Y.S.2d 84 (1st Dept. 1991) ("[I]t is well settled in New York that no fiduciary obligation is owed by an employer to an at-will employee.").

<u>Violation of New York Labor Law Article 6</u>

Plaintiff maintains that Defendant failed to pay him as required by Labor Law Article 6. Generally, the Amended Complaint suggests that Defendant failed to pay Plaintiff wages, salary, commissions and/or bonuses as required by § 191(1)(c) and 191(3). The pleading does not specify exactly what Defendant failed to pay Plaintiff, and states only that "Defendant wrongfully failed to pay Mr. Lamb and prevented him from receiving the wages,

---

[11] In his memo of law, Plaintiff gives this explanation of how a fiduciary duty arose: "Mr. Lamb clearly required certain assurances before divulging the valuable information sought by defendant, including a three (3) year employment term, among other things (e.g., Complaint ¶¶ 8-11), thereby constituting the heightened, fiduciary relationship." Pl. Memo of Law [#14] at p. 13. As discussed elsewhere herein, however, an employee-employer relationship such as existed between the parties does not give rise to a fiduciary relationship.

salary, commissions, bonuses and/or other monies to which Mr. Lamb was entitled and/or would have been entitled under the parties' agreement." Amended Complaint ¶ 31.

Defendant maintains that the Amended Complaint fails to state a plausible claim under Labor Law Article 6, since it merely alleges that Defendant denied Plaintiff the opportunity to earn future earnings, but does not allege that Plaintiff actually earned compensation which Defendant failed to pay him.  In response, Plaintiff contends that the Amended Complaint asserts a claim under Article 6 for "commissions and bonuses" that he would have earned if he had remained employed with Defendant, as well as "base salary." Pl. Memo of Law [#14] at p. 14.  In fact, Plaintiff contends  that the Amended Complaint "clearly states that defendant wrongfully denied Mr. Lamb his base salary." *Id*.

The Court agrees with Defendant that the pleading fails to allege that Plaintiff is owed anything for work that he performed up to and including the date of his termination.  Instead, as clarified by Plaintiff's response to the motion to dismiss, he is seeking base salary, commissions and bonuses that he would have earned if he had remained employed for three years.  That is, when Plaintiff refers to "salary" in the pleading and in his responsive papers, he is referring to salary that he would have earned during the remaining two-and-one-half-years that he maintains were left on his employment contract.  He is not referring to any salary that was earned up to and including the date of his termination.  The Court's understanding on this point is supported not only by the pleading and the portion of Plaintiff's memo addressing the Article 6 claim, but also by other portions of his memo of law [#14] submitted in opposition to Defendant's motion to dismiss.  For example, as part of his argument concerning the Article 6 claim, Plaintiff states:

> Mr. Lamb's [Amended] Complaint clearly states a cause of action for a three
> (3) year employment agreement consisting of an annual base salary plus
> commissions and bonuses.  He deserves the opportunity to prove not only the
> unpaid part of his salary, but also the commissions and bonuses that he
> reasonably would have earned.

Pl. Memo of Law [#14] at p. 15.  Clearly, Plaintiff's used of the word salary refers to future salary, and is tied to his argument that he had a three-year contract, which the Court has already dismissed.[12]  The pleading does not indicate that Plaintiff had met the requirements necessary to earn any bonuses or commissions under the compensation plan.

Consequently, the Amended Complaint does not allege that Plaintiff is owed anything for the period that he actually worked for Defendant, namely, December 16, 2011, through July 13, 2012.  Because of that, Plaintiff's claim under Labor Law Article 6 must fail. *See, Giuntoli v. Garvin Guybutler Corp.*, 726 F.Supp. 494, 509 (S.D.N.Y. 1989) ("This provision [Labor Law § 190(1), which defines "wages"] clearly states that unearned, future payments cannot be considered "wages" under the NYLL. Therefore, insofar as plaintiff's sixth cause of action seeks damages for breach of an alleged three-year employment agreement between herself and Garvin (her fourth cause of action), comprised of unearned future salary and bonuses, it does not state a claim for a violation of NYLL.").

<u>Unjust Enrichment and Quantum Meruit</u>

The Amended Complaint further alleges that "Defendant has been unjustly, inequitably and unfairly enriched at Mr. Lamb's expense." Amended Complaint [#10]  ¶ 34.

---

[12]Similarly, in his argument concerning the unjust enrichment claim, Plaintiff states that Defendant did not pay him "for *the balance* of that [first] year," but does not claim that he was unpaid for the part of the year that he actually worked for Defendant. See, Pl. Memo of Law [#14] at p. 16 (emphasis added).  Additionally, Plaintiff's memo explains that his quantum meruit claim is "based on the fact that defendant wrongly prevented Mr. Lamb from completing not only years two and three of his employment, but also the second half of year one, all at an annual salary of at least $50,000." *Id.* at p. 19.

The cause of action does not specify how Defendant was unfairly enriched, *see, id.* at ¶¶ 33-36, however, the obvious inference from the entire pleading is that after Defendant terminated Plaintiff's employment, it benefitted from the work that Plaintiff had performed during the six months of his employment. The pleading suggests that Defendant's actions, in utilizing the information that Plaintiff had compiled, were unjust, because Plaintiff did not remain employed long enough to realize the bonuses and commissions that he presumably would have earned if he had remain employed for three years, as he believes that he was entitled to do.

In this regard, the unjust enrichment claim is essentially identical to the quantum meruit claim[13], which is supported in pertinent part by these allegations:

> In good faith, Mr. Lamb performed services on behalf of MTSI including, by way of example and not limitation, cultivating crucial, high ranking contacts in the banking industry, and providing MTSI with access to those contacts and knowledge of the ways in which Mr. Lamb develops such strategically valuable intelligence. . . . MTSI accepted Mr. Lamb's services . . . . Mr. Lamb reasonably expected to be compensated fairly for such services. Upon information and belief, the reasonable value of the services rendered exceeds $165,000.

Amended Complaint ¶¶ 52-55. The pleading's reference to $165,000.00 again indicates that Plaintiff is seeking the benefit of the purported three-year agreement, which the Court

---

[13]*See, Snyder v. Bronfman*, 13 N.Y.3d 504, 508, 893 N.Y.S.2d 800, 802 (2009) ("Unjust enrichment and quantum meruit are, in this context, essentially identical claims, and both are claims under a contract implied in law to pay reasonable compensation.") (citation and internal quotation marks omitted); *see also, Learning Annex Holdings, LLC v. Rich Global, LLC*, 860 F.Supp.2d 237, 250 (S.D.N.Y. 2012) ("The issue here . . . is whether quantum meruit and unjust enrichment are distinct grounds for recovery in the context of a claim for services rendered in the absence of an enforceable contract. Unless and until binding case law holds otherwise, I conclude that they are not distinct grounds for recovery.").

has already found did not exist. *See*, Def. Memo of Law [#14] p. 19 (Indicating that figure of $165,000. is based on Defendant allegedly preventing Plaintiff from completing the last 2.5 years of the purported three-year agreement).

"In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (citations and internal quotation marks omitted).  "In order to recover in quantum meruit under New York law, a claimant must establish (1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citation and internal quotation marks omitted).  "Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim." *Id*.

Defendant contends that the pleading fails to state a claim for unjust enrichment, since such a claim ordinarily cannot be maintained by an employee who was paid a salary for his work.  Defendant states that to maintain such a claim, an employee must allege that he performed work that exceeded the scope of his duties, and that his salary therefore did not constitute reasonable pay for the services provided, which Plaintiff has not done. Defendant also reiterates that Plaintiff was an at-will employee, and that at-will employees cannot maintain unjust enrichment claims for pay that they would have earned if their employment had not been terminated.  Additionally, Defendant contends that the pleading

merely recites the element of the claim, but does not plead facts to show that such a claim is plausible.

Similarly, Defendant contends that Plaintiff cannot use a claim for quantum meruit to circumvent the statute of frauds.  Defendant also maintains that  the pleading fails to plead sufficient facts to support a claim for quantum meruit.  Specifically, Defendant states that the pleading fails to describe how Defendant accepted Plaintiff's  services, why it was reasonable for Plaintiff to expect compensation for his services, or how he arrived at the alleged value of those services.

With regard to the unjust enrichment claim, Plaintiff's response to Defendant's arguments consists of a single sentence:  "The notion that Mr. Lamb cannot maintain an unjust enrichment claim because MTSI paid him a salary is easily refuted by the language in the Complaint:  after misappropriating Mr. Lamb's valuable banking intelligence, defendant did not even permit him to finish the first year of his three year agreement, nor did it pay him for the balance of that year."  Pl. Memo of Law [#14] p. 16.  With regard to the quantum meruit claim, Plaintiff indicates, in pertinent part, that it is "false" for Defendant to assert that the claim is barred by the statute of frauds, but does not explain why. *Id*. at p. 19.  In fact, the sections of Plaintiff's brief addressing the unjust enrichment and quantum meruit claims fail to cite any type of legal authority. *Id*. at pp. 16, 18.

The Court agrees with Defendant that the unjust enrichment/quantum meruit claims must be dismissed. The Court has determined, as a matter of law, that Plaintiff was an at-will

employee, and it is evident from the pleading that he was paid his salary up until the date that Defendant terminated his employment.[14]  On this point,

> [s]everal courts within this Circuit have held that 'a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary.' *Levion* [*v. Societe Generale*, 822 F.Supp.2d 390, 405 (S.D.N.Y. 2011)][15] (*citing Karmilowicz v. The Hartford Fin. Servs. Grp.*, 2011 WL 2936013, at *12 (S.D.N.Y. July 14, 2011)). Rather, a plaintiff must allege that he performed work that 'exceeded the scope of his duties' in his position and, therefore, 'his salary did not constitute reasonable value for the services he provided to [his employer].' *Id.*; *see also Hughes v. Standard Chartered Bank, PLC*, 2010 WL 1644949, at *8 (S.D.N.Y. Apr. 14, 2010) ("Because plaintiff has failed to allege that the compensation that he received did not constitute reasonable value for the services that he provided to [his employer], he has failed to state a claim for unjust enrichment.")

*James v. Countrywide Financial Corp.*, 849 F.Supp.2d 296, 322-323 (E.D.N.Y. 2012).  Here, the pleading does not plausibly allege that Plaintiff performed work that exceeded the scope of his duties.  Rather, the pleading indicates that Plaintiff merely did exactly what he was hired to do, for which he was paid his salary.  The pleading does not allege facts to plausibly indicate that Plaintiff met the requirements to receive a commission or bonus under the compensation plan.  To the contrary, the pleading merely indicates that as of June 2012, Plaintiff had nine "business prospects in his pipeline," with "estimated closing dates starting

---

[14]It is the *balance* of the alleged three-year contract period for which Plaintiff is seeking compensation. The pleading does not indicate that Defendant failed to pay Plaintiff his salary during the period ending with the termination of his employment. *See*, Pl. Memo of Law [#14] at p. 16 ("Nor did [Defendant] pay him for the *balance* of that year.") (emphasis added).  The fact that Defendant did not pay Plaintiff a salary during a period when it no longer employed him fails to state a claim of unjust enrichment.

[15]*Levion v. Societe Generale*, 822 F.Supp.2d 390, 405 (S.D.N.Y. 2011) ("[T]he law is clear that a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary."), *affirmed*, 503 Fed.Appx. 62 (2d Cir. Nov. 20, 2012) (unpublished).

as early as the next month." Amended Complaint ¶ 21(a). The pleading does not allege that Defendant ever closed a business deal with any of those nine banks. At most, the pleading alleges that after Defendant terminated Plaintiff's employment, it had a single business meeting with an executive of one of those nine banks. Amended Complaint ¶ 21(d). In sum, the complaint fails to plausibly plead that Defendant was enriched by Plaintiff's services, let alone unjustly enriched. Accordingly, the claims for unjust enrichment and quantum meruit are dismissed.

### *Misrepresentation*

Plaintiff contends that Defendant committed the tort of "misrepresentation," because the parties had a "special relationship," and Defendant both "provided false and misleading information" and failed to disclose other information. Specifically, the Amended Complaint states, in pertinent part:

> At all times relevant, defendant had a duty to deal forthrightly and directly with plaintiff. At all relevant times, there were special relationships between and among the parties *e.g.*, based on MTSI's solicitation and employment of, and contractual relationship with Mr. Lamb. Upon information and belief, defendant provided false and misleading information to plaintiff, and failed to disclose to plaintiff information that defendant had a duty to disclose. Mr. Lamb foreseeably and reasonably relied on defendant's misrepresentations, including its failures to disclose and otherwise act, which caused damages to Mr. Lamb[.]

Amended Complaint [#10] ¶ ¶ 38-41. The pleading does not specifically identify the alleged "false and misleading" misrepresentations, though Plaintiff's brief clarifies that one such instance was Defendant's "agree[ment] to a three year employment term in order to gain access to Mr. Lamb's valuable banking intelligence." Pl. Memo of Law [#14] at p. 16. There is no explanation regarding information that was allegedly withheld.

24

Plaintiff indicates that the pleading is intentionally ambiguous as to whether Defendant committed negligent misrepresentation or fraudulent misrepresentation, since the lawsuit is at the "initial stage." *Id.*   Accordingly, the Court will consider whether the pleading states either type of claim.[16]  First,

> [t]o state a claim for fraudulent misrepresentation under New York law a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.  Fraud must be pled with particularity, Fed.R.Civ.P. 9(b), which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 186 -187 (2d Cir. 2004) (citations omitted).

The instant pleading fails to plausibly state a claim for fraudulent misrepresentation since it fails to identify the alleged materially-false representation at all, let alone with particularity, fails to allege that Defendant acted intentionally, and fails to allege how Plaintiff was damaged.  The pleading also fails to allege how Plaintiff reasonably relied on the alleged misrepresentation, but to the extent Plaintiff claims to have relied on an assurance of continued employment over a three-year period, such reliance would not be reasonable

---

[16]Defendant construes this claim as being for fraudulent misrepresentation, and maintains that it is deficient because it is merely duplicative of the breach of contract claim.  Defendant further contends that the pleading fails to allege that Defendant owed Plaintiff a separate legal duty, that it committed a fraud collateral to or extraneous to the contract or that Plaintiff suffered special damages.  Defendant further states that even if Plaintiff could plead a separate fraud claim that was collateral or extraneous to the contract, that he has not done so with the particularity required by FRCP 9.

since he was an at-will employee.  Accordingly, to the extent the pleading is attempting to

assert a claim for fraudulent misrepresentation, it is dismissed.

Turning to Plaintiff's cause of action for negligent misrepresentation, the elements of

such a claim under New York law are clear:

> Under New York law, the elements for a negligent misrepresentation claim are
> that (1) the defendant had a duty, as a result of a special relationship, to give
> correct information; (2) the defendant made a false representation that he or
> she should have known was incorrect; (3) the information supplied in the
> representation was known by the defendant to be desired by the plaintiff for a
> serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the
> plaintiff reasonably relied on it to his or her detriment.  However, the alleged
> misrepresentation must be factual in nature and not promissory or relating to
> future events  that might never come to fruition.

*Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (citations

omitted).

The instant cause of action for negligent misrepresentation fails to state a plausible

claim for several reasons.  First, as already mentioned, Plaintiff's reliance on an alleged

promise by Defendant to employ him for three years would not be reasonable since he was

an at-will employee.  Moreover, such a promise does not relate to a present factual matter,

but relates to future events.  The pleading also fails to plausibly allege the existence of a

special relationship between the parties.  On that point, the pleading indicates that a special

relationship existed "based on MTSI's solicitation and of employment of" Plaintiff. Amended

Complaint [#10] ¶ 39.  However, an employer-employee relationship is not sufficient to

establish the required special relationship. *See, Sampson v. MediSys Health Network, Inc.*,

No. 10–CV–1342 (SJF)(ARL), 2012 WL 3027838 at *10 (E.D.N.Y. Jul. 24, 2012) ("Indeed,

it is settled that an employer-employee relationship is not fiduciary in nature and thus does

not constitute a 'special relationship' for purposes of a negligent misrepresentation claim.") (citation omitted); *see also, Cohen v. Avanade, Inc.*, 874 F.Supp.2d 315, 327 (S.D.N.Y. 2012) ("Here, Plaintiff alleges that, 'as prospective employer of the Plaintiff, the Defendants owed a duty to the Plaintiff to provide reliable and accurate information about the Avanade company.' (Compl. ¶ 60). Courts have routinely held, however, that the relationship between employer (or prospective employer) and employee is not fiduciary in nature and thus does not constitute a 'special relationship' for purposes of a negligent misrepresentation claim.") (citations omitted).  For all of the foregoing reasons, Plaintiff's claim for "misrepresentation" is dismissed.

### Conversion

Plaintiff alleges that Defendant converted his "valuable information and assets." Specifically, the Amended Complaint states, in pertinent part:

> Mr. Lamb had an immediate superior right of possession to his valuable information and other assets.  Defendant exercised unauthorized dominion over Mr. Lamb's valuable information and other assets, to the exclusion of Mr. Lamb's rights.  Upon information and belief, defendant's improper actions were willful, wanton, deliberate and/or malicious.  Defendant's conversion of Mr. Lamb's valuable information and other assets has caused damages to Mr. Lamb in an amount to be determined[.]

Complaint ¶ ¶ 43-46.  The Complaint does not specify the nature of the "information and other assets" to which it refers.  However, the reasonable inference is that the pleading is referring to the information that Plaintiff compiled regarding the banks to whom Defendant was attempting to market its product.

Defendant maintains that the Amended Complaint fails to state a claim since, for example, it fails to plausibly plead that Plaintiff had a superior right to possession of the

information that he claims was converted.  The Court agrees.  In that regard, under New York law,

> [a] conversion occurs when a party, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession.  Two key elements of conversion are (1) the plaintiff's possessory right or interest in the property and (2) the defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.

*Lynch v. City of New York*, 108 A.D.3d 94, 101, 965 N.Y.S.2d 441, 446 (1st Dept. 2013) (citations and internal quotation marks omitted).  With regard to possessory rights of an employee's work product, "it is axiomatic that materials or products developed by an employee in the course of his or her employment, absent any agreement to the contrary, belong to his or her employer." *Wieder v. Chemical Bank*, 202 A.D.2d 168, 169, 608 N.Y.S.2d 195, 196 (1st Dept. 1994).[17]

In this case, Defendant hired Plaintiff specifically to access his "valuable information on the Top 100 banks, the senior level executives in those banks and information relevant to their strategies and priorities." Amended Complaint ¶ 5.  The pleading suggests that after Defendant terminated Plaintiff's employment, it improperly retained and/or utilized whatever information he had compiled or revealed regarding the banks to whom he was attempting

---

[17]*See also, U.S. v. Slutsky*, 352 F.Supp. 1105, 1109 (S.D.N.Y. 1972) ("The inventions and literary products produced by an employee hired for the purpose of producing them belong to his employer. *Hobbs v. United States*, 376 F.2d 488 (5th Cir. 1967). Similarly, the work product of an accountant hired full time for the purpose of keeping his employer's records belongs to his employer."); *Youssef v. Halcrow, Inc.*, No. 11 Civ. 2283(PKC), 2011 WL 5244950 at *2 (S.D.N.Y. Nov. 1, 2011)  ("Under New York law, the work product of an agent within the scope of his assigned duties as an employee is owned by the employers *ab initio*.") (citation and internal quotation marks omitted).

to market Defendant's product.  However, such information belonged to Defendant by virtue of the employment relationship, in the absence of some agreement to the contrary, and the pleading fails to allege the existence of any such agreement.[18]  Accordingly, the Amended Complaint fails to state a claim for conversion.

### Promissory Estoppel

Plaintiff contends that he has a cause of action for promissory estoppel, and in that regard the Amended Complaint states, in pertinent part:

> MTSI made clear and unambiguous promises to Mr. Lamb *e.g.*, that in exchange for Mr. Lamb sharing his valuable banking contacts, MTSI would provide him with a three year term of employment, including a minimum base salary and the opportunity to exceed that through performance based salary increases, commissions and bonuses.  Mr. Lamb reasonably relied on MTSI's promises.  Said reliance caused damages to Mr. Lamb in an amount to be determined[.]

Amended Complaint [#10] at ¶ ¶ 47-50.

"The elements of a promissory estoppel claim are a) a clear and unambiguous promise; b) reasonable and foreseeable reliance by the party to whom the promise is made; and c) an injury sustained by the party asserting the estoppel by reason of his reliance." *Van Brunt v. Rauschenberg*, 799 F.Supp. 1467, 1473 (S.D.N.Y. 1992) (citation omitted).  It is important to note, however, that New York has "restrictive approach to promissory estoppel, which reserves the doctrine only for a limited class of cases based on unusual circumstances." *Baguer v. Spanish Broadcasting System, Inc.*, No. 04-CV-8393 (KMK), 2007

---

[18]In opposition to Defendant's motion to dismiss, Plaintiff asserts, in conclusory fashion, that Plaintiff "had a superior right of possession in the valuable banking contacts that [he] developed through his own diligent and sustained efforts." Pl. Memo of Law [#14] p. 17.  However, Plaintiff does not explain why that is so, when Defendant hired him specifically to provide such information.

WL 2780390 at *6 (S.D.N.Y. Sep. 20, 2007) (citation and internal quotation marks omitted). In that regard, many courts in this district have flatly held that "New York does not recognize promissory estoppel as a valid cause action when raised in the employment context." *Van Brunt v. Rauschenberg*, 799 F.Supp. at 1473 (citation omitted); *see also, Deutsch v. Kroll Associates, Inc.*, No. 02 Civ. 2892(JSR), 2003 WL 22203740 at *3 (S.D.N.Y. Sep. 23, 2003). ("New York law, which here governs, does not recognize promissory estoppel in the employment context.") (collecting cases); *but see*, *Baguer v. Spanish Broadcasting System, Inc.*, 2007 WL 2780390 at *6 (Indicating that while the court was "aware of no New York State case that has . . .  adopted a categorical rejection of promissory estoppel in the employment context,"  nevertheless, "the clear weight of the authority in this district" is to reject such claims).

Defendant maintains that it is "black letter law" that an at-will employee cannot maintain a claim for promissory estoppel against his employer, based on statements that the employer allegedly made about his employment.  In that regard, Defendant states that since an at-will employee can be terminated at any time, he cannot "reasonably rely" on anything that his employer tells him about his future employment.  Defendant further contends that, even assuming Plaintiff could establish reasonable reliance, he has not otherwise pleaded a claim of promissory estoppel.  Specifically, Defendant states that the pleading does not allege that it made a "clear and unambiguous promise" to Plaintiff.  On that point, Defendant contends that the agreement's compensation schedule is not a sufficiently clear and unambiguous promise.  Defendant further maintains that the pleading does not plausibly allege that Plaintiff reasonably relied on such a promise.

The Court agrees that the pleading fails to state a claim for promissory estoppel.  In that regard, the pleading fails to allege that Defendant made "a clear and unambiguous promise" of continued employment.  Instead, the pleading indicates that Plaintiff made a *demand* for continued employment, and in return, received only the aforementioned compensation plan, which does not contain a clear an unambiguous promise of continued employment. See, Amended Complaint [#10] at ¶ ¶ 8-9.  Moreover, the pleading does not explain how Plaintiff relied on the alleged promise, or how he was injured as a result of such reliance. For instance, the pleading does not allege that Plaintiff gave up any particular business opportunities in reliance upon the alleged promise.  To the extent Plaintiff is claiming that he was injured because he shared valuable business information with Defendant in reliance on the promise, the Court finds that such allegation is insufficient, for the same reason that his conversion claim fails.  That is, Plaintiff did not suffer any injury in that regard since Defendant paid him  a salary in exchange for that information.  To the extent Plaintiff is claiming that he was injured because he did not receive the salary, bonuses and commissions that he expected to make during the anticipated three years of employment, such reliance on an alleged promise of continued employment would not have been reasonable, since he was an at-will employee. *See, Arias v. Women in Need, Inc.*, 274 A.D.2d 353, 354, 712 N.Y.S.2d 103, 103 (1st Dept. 2000) (Holding that the plaintiff could not establish the reasonable reliance element of a promissory estoppel claim since the offered employment was at-will); *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59, 853 N.Y.S.2d 270, 272 (2008) ("In that the length of employment is not a material term of at-will employment, a party cannot be injured merely by the termination of the contract—neither party can be said to

have reasonably relied upon the other's promise not to terminate the contract.").   For all of these reasons, the promissory estoppel claim is dismissed.

CONCLUSION

Defendants' motion to dismiss [#13] is granted, and this action is dismissed with prejudice.

SO ORDERED.

Dated:        September 13, 2013
              Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge